Nelson, J.,
delivered the opinion of the court.
This attachment and garnishment bill was filed to recover damages of William Rodgers for his failure to perform a contract in regard to a growing crop of corn. There was no demurrer to the jurisdiction, and the bill can be maintained under the Code, ss. 4318, 4385, 3455. William Rodgers, being about to remove to Texas, sold his farm to another party and his hogs and corn to the complainants, with whom he entered into a written contract as . follows:
“This agreement, made and entered into between Wm. Rodgers, of Hamilton county, Tennessee, of the one part, and G. P. Harris and T. S. Magill, of Catoosa county, Georgia, of the other part, witnesseth that the said Wm. Rodgers has this day bargained and sold to G. P. Harris and T. S. Magill, one lot of hogs — fifty head, more or less — and all the corn growing on the farm on which the said Rodgers now lives. The said G. P. Harris and T. S. Magill agree to pay the said Wm. Rodgers seven cents per pound for the hogs; *628 money to be paid on receiving the hogs. They also agree to gather said corn and pay fifty cents per bushel for all the merchantable corn. We also agree to commence gathering the corn by the 1st of November and gather as soon as practicable. In witness whereof, the said parties have hereunto set their hands and seals this day, August 14, 1866. Half the money to be paid the 1st of October next.
“ Wm. Rodgers.
líG. P. Harris.
“T. S. Magill.”
Payment was made for the hogs, and that part of the contract is not in litigation. Harris and Magill also paid two hundred dollars in part of the price for the corn. The precise date of this payment is not fixed, but it was probably made before the 1st of October. No further payment having been made, Rodgers sold the residue of the growing crop — 420 bushels to defendant Campbell, and 350 bushels to defendant Watkins — and started on his removal to Texas on the 11th of October, 1866. One witness estimates that there were 1,370 bushels; but the weight of proof is that there were only 770 bushels sold in addition to the 400 bushels set apart for and received by complainants. Rodgers set apart the 400 bushels of corn as a satisfaction to Harris and Magill for the $200 they had paid, which were afterward delivered to them, under their verbal protestation that they would hold Rodgers to the performance of his entire contract. Previous to the removal of Rodgers, he told Harris, as one witness states, sometime in September, 1866, that *629 he had sold a portion of his corn, and Harris replied, that Rodgers had violated the contract, and that he (Harris) was therefore not willing to pay the full half of the price of the corn in advance. The sales to Campbell and Watkins were made with full knowledge on their part that there had been a previous sale of the corn to complainant, though they stated they had been informed he had violated the contract with Rodgers. Rodgers sold to them at fifty cents per bushel, the saíne price he was to receive from complainants. Before the 1st of December, 1866, the price of corn iiad increased to from seventy-five cents to one dollar per bushel, according to the statements of different witnesses. Complainants had made a contract to sell the corn they had purchased to another party, and to deliver it at Ooltowah, at one dollar per bushel, but could not comply with their contract, owing to the failure of Rodgers to comply with his.
On this state of facts, we are of the opinion that the payment of one half the price of the corn was not a condition precedent to the vesting of the title in complainants to the growing crop of corn; but if it was, the sale of part of the corn by Rodgers in September would excuse them from paying more than they had already paid, aside from the difficulty arising upon the face of the contract, and from the nature of the transaction as to the ascertainment of the payment of one half before the measurement of the corn. If complainants had failed to pay any part of the moiety of purchase money by the 1st of October, this would not have effected a rescission of the contract, *630 and Rodgers could not lawfully re-sell the corn without a demand and refusal of payment, or giving the buyer notice of his intention to do so within a reasonable time from the service of such notice: Mc Clung and Crozier v. Williams, 5 Sneed, 718-721; Williams v. Godwin, 4 Sneed, 558.
It follows that Rodgers is liable to account to-complainants for the difference in value between the price of the corn stipulated to be paid by complainants, and its market value on the premises at the time when the corn could have been gathered with ordinary diligence. There is no evidence in the record to show in what length of time the 770 bushels of corn could have been gathered after complainants were to commence gathering on the 1st of November. The cause will be remanded for further proof on this point, and an account will be taken under the direction of the Chancellor, and satisfaction decreed out of the debt due from Post, attached in' this case.
The Chancellor’s decree will be reversed, and one half the costs in this court and the court below will be paid by defendant Rodgers, and the other half by defendants Campbell and Watkins.